# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:07cv133

| | |
|---|---|
| CANE CREEK CYCLING COMPONENTS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| Vs. | )     ORDER<br>) |
| TIEN HSIN INDUSTRIES CO., LTD.; and FULL SPEED AHEAD, INC., d/b/a FULL SPEED AHEAD, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER** is before the court on defendants' Motion for Rehearing, which the court deemed to be a Motion for Reconsideration. On October 9, 2007, the court at the request of the defendants conducted a hearing at which oral arguments were heard.

Specifically, defendants take exception with this court's extension of the time for service of the Complaint in this matter, by and through an Order which was entered prior to defendants making any appearance herein. Counsel for defendants stated on three occasions during the hearing and upon the official record that the court had acted *ex parte*. In fact, the court acted upon the pleadings of the only parties who had made an appearance, with counsel for defendants making a general appearance only after such Order was entered. According to Black's Law Dictionary,

> [a] judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to or contestation by, any person

-1-

adversely interested.

Blacks Law Dictionary, 5th Ed. (St. Paul, 1979). At the time, only one party was properly before the court, plaintiff had no obligation to serve its motion on the opposing party which had at that point refused service and had not otherwise appeared. Finally, even if defendants were somehow parties at that time, Rule 6(b)(1), Federal Rules of Civil Procedure, provides that the court may "with or without motion or notice order the period enlarged . . . ."[1]

In challenging the due diligence as well as the alternative findings of good cause and excusable neglect, defendants challenge this court's earlier Order. In order to upset such interlocutory decision on appeals, defendants burden would be to show the reviewing court that such decision constituted an abuse of discretion. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390 (4th Cir. 2003). To upset such decision upon a review by the district court under 28, United States Code, Section 636(b), defendants would need to convince the district court that such decision was clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). Reconsideration, however, appears to be governed by Rule 60(b), Federal Rules of Civil Procedure, where a party asks that a court reconsider an Order based on a mistake. Only extraordinary circumstances justify granting relief under Rule 60(b).

---

[1] While the court understands that counsel's intentions in using the phrase *ex parte* were not to impute that the court had acted unethically or improperly, this court must also make a record inasmuch as intentions are difficult to discern from a transcript.

Moss v. Potter, ___ F.3d ___, 2007 WL 2900551, 2 (3rd Cir. 2007).[2] Similarly, the Court of Appeals for the Fourth Circuit has held, as follows

> If the motion has been made under Federal Rule of Civil Procedure 60(b), a court should grant it only to "accomplish justice" because the rule "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir.1979).

Westport Ins. Corp. v. Albert, 2006 WL 3522500, 4 (4th Cir. 2006).[3] To aid further review, the court will set forth pertinent portions of that Order:

> Tien Hsin Industries Co., Ltd., appears to be a Taiwanese corporation domiciled in Taiwan. In serving a defendant in a foreign country, it appears that the 120 day period for service found in Rule 4(m), Fed.R.Civ.P., does not apply. Lewis v. Vollmer of Am., 2006 WL 3308568, **2-3 (W.D. Pa. 2006). Instead, it appears that courts apply a "flexible due diligence standard" to determine whether service is timely. Papst Licensing GmgH & Co. KG v. Sunonwealth Elec. mach. Ind. Co., 332F.Supp.2d 1142, 1151 (N.D. Ill. 2004). There appears to be no authoritative decision in the Fourth Circuit as to which standard applies, and plaintiff has, in an abundance of caution, come to court for guidance. The court will, therefore, consider the request under a due diligence and Rule 6(b) standard.
> As outlined in paragraphs one through 23 of the motion, plaintiff has thus far proceeded with due diligence in first attempting to resolve this matter without service; when such failed, plaintiff thereafter attempted to serve such defendant through its counsel, who refused service. In considering whether plaintiff has acted with due diligence, the court has considered the unique problems in service of a Taiwanese corporation as previously addressed by a judge of this court Chairworks Taiwan Ltd. v. Candlertown Chairworks, Inc., 2001 WL 1018818 (W.D.N.C. 2001). Under a due diligence standard, time has not expired.
> Considering plaintiff's request under Rule 6(b), the 120 day

---

[2] Due to the limits of ECF, a copy of such yet to be published opinion is placed in the electronic record through reference to the Westlaw citation.

[3] Due to the limits of ECF, a copy of such unpublished opinion is placed in the electronic record through reference to the Westlaw citation.

period recently ran; however, plaintiff has shown good cause and excusable neglect inasmuch as plaintiff was lulled into inaction by defendant's participation in ADR. Further, the record now before the court shows that this defendant was well aware of the litigation and took steps to file its own action in another forum, and in the end refused to accept service through counsel. Thus, plaintiff has shown "excusable neglect" under Rule 6(b) that justifies reopening such period and enlarging such period of service to match the time for service of the additional defendant, Full Speed Ahead, Inc. Finally, the court finds no actual prejudice to the defendant inasmuch as defendant has known of the pendency of this action for at least four months.

Docket Entry #7, at 1-2. The 23 paragraphs this court relied on, while mentioned but not set forth in the previous Order for the purpose of brevity, provided the undersigned with a substantial basis from which to determine that an extension of the time for service was proper. Inasmuch as defendants have challenged the court's basis, the court will set forth those contentions in full:

> 1. On April 12, 2007, Plaintiff Cane Creek filed the original Complaint against Defendant Tien Hsin Industries Co., Ltd. ("Tien Hsin") alleging claims for breach of contract related to nonpayment of royalties under two terminated license agreements. See Complaint. For the next four months, Tien Hsin made several partial payments to Cane Creek and repeatedly stated that it respected Cane Creek's intellectual property rights and desired to resolve this dispute amicably. It was not until early August of 2007 that Cane Creek realized Tien Hsin had no intention of honoring Cane Creek's patent rights, but instead intended to continue marketing and selling unlicensed products without paying any royalties. On August 23, 2007 Cane Creek filed its Amended Complaint and has resumed efforts to serve Tien Hsin with the Summons, Complaint and Amended Complaint.
>
> 2. Shortly after the original Complaint was filed, Mr. Benjamin Su of the Greattop International Patent Trademark & Law Office faxed a letter to Cane Creek stating that "our law firm represents Tien Hsin Industries Co., Ltd." He stated that Tien Hsin "always respects your Intellectual Property and pay royalty [sic] to you for the past years" and that Tien Hsin desired to resolve the differences between the parties. A copy of Mr. Su's April 20, 2007 letter is attached as Exhibit "A" and incorporated herein by reference. Cane Creek later learned that Mr. Su

is not, in fact, a licensed attorney.

3. On April 20, 2007 the undersigned counsel for Cane Creek faxed a letter back to Mr. Su requesting payment of all past due royalties under the terminated agreements. The letter also advised Mr. Su that a Complaint had been filed against Tien Hsin with this Court. A copy of the undersigned's letter is attached as Exhibit "B" and incorporated herein by reference.

4. Also on April 20, 2007, Mr. Robert Adolph, an attorney with the Adolph Law Group in Seattle, sent a letter on behalf of Tien Hsin to the undersigned by U.S. Mail (and purportedly by e-mail) stating that Tien Hsin "has agreed to make all payments due Cane Creek to date and has instructed his bank yesterday to wire transfer the amounts due." He also stated that since "the product line is barely profitable and the Rader patent expires in little more than three years, the cessation of a license arrangement is no longer important to FSA. FSA can wait out this short interval and produce headsets with no necessary royalty." A copy of Mr. Adolph's letter is attached as Exhibit "C" and incorporated herein by reference.

5. By fax and e-mail dated May 1, 2007, the undersigned responded to Mr. Adolph's letter and advised that if the past due royalty payments were not made, Cane Creek would notify the bicycling industry of the termination of the license agreements. A copy of the undersigned's letter is attached as Exhibit "D" and incorporated herein by reference.

6. Also on May 1, 2007, Mr. Adolph sent an e-mail to the undersigned again promising payment and also requesting more information about the Complaint filed against Tien Hsin with this Court. A copy of this e-mail is attached as Exhibit "E" and incorporated herein by reference.

7. In response to Mr. Adolph's e-mail, the undersigned e-mailed a copy of the original Complaint on May 1, 2007. A copy of this e-mail is attached as Exhibit "F" and incorporated herein by reference.

8. On May 11, 2007, the President of Tien Hsin, Mr. Douglas Chiang, sent an e-mail to Cane Creek President Brad Thorne authorizing the Managing Director of Defendant Full Speed Ahead, Inc. ("FSA"), Mr. Matt VanEnkevort, to represent Tien Hsin in the negotiations. FSA is a wholly owned subsidiary of Tien Hsin. In the e-mail, Mr. Chiang stated as follows:
> "I approve that Matt [VanEnkevort] can represent me to talk to you all things regarding headest [sic] (for example,

  license, royaliy [sic], patent [..] etc)."
A copy of this e-mail is attached as Exhibit "G" and incorporated herein by reference.

9. On May 18, 2007, the undersigned faxed and e-mailed a letter to Mr. Adolph acknowledging that Cane Creek had received some payments of past due royalties, demanding payment of the remaining past due royalties and advising that Cane Creek desired to wind down the relationship in an amicable and professional manner. A copy of that letter is attached as Exhibit "H" and incorporated herein by reference. Mr. Adolph did not respond to this letter.

10. On May 23, 2007, Mr. VanEnkevort issued a letter to all Tien Hsin and FSA customers advising that their license agreements with Cane Creek had been terminated and asking those customers "to find an alternate supplier for your Aheadset® patent OEM needs." A copy of that Notice is attached as Exhibit "I" and incorporated herein by reference.

11. Thereafter, there were multiple e-mail exchanges between Cane Creek and authorized representatives of Tien Hsin and FSA in which Tien Hsin and FSA agreed to pay royalties to Cane Creek for all remaining inventory under the terminated agreements. In late May, Cane Creek made specific proposals regarding the orderly liquidation of this inventory, but Tien Hsin and FSA never signed them. As a result, the proposals were later withdrawn.

12. Thereafter, on July 12, 2007, one final payment was received from Tien Hsin for the sale of formerly licensed products. Based on an analysis of all payments made since the termination; the fact that two prior audits (2003 and 2006) did not verify the accuracy of Tien Hsin's previous reports; and based on the conduct of Tien Hsin since the date of termination Cane Creek now believes that Tien Hsin has not reported all of its sales and has not paid all of the royalties due.

13. From May through early August of 2007, authorized representatives of FSA and Tien Hsin made several statements to Cane Creek that they intended to respect Cane Creek's intellectual property rights and made repeated promises to pay Cane Creek for all royalties due. However, on May 31, 2007, Mr. Benjamin Su sent a baseless letter to the bicycling industry claiming that Cane Creek's patent was invalid. A copy of that letter is attached as Exhibit "J" and incorporated herein by reference. Cane Creek, in turn, made multiple demands to Tien Hsin and FSA that Mr. Su's letter be corrected or withdrawn, demanded that full payment

of all royalties be made and demanded that FSA and Tien Hsin discontinue advertising and selling headsets covered by the Cane Creek patent and trademarks.

14. On June 2, 2007, Mr. VanEnkevort sent an e-mail to Mr. Thorne stating that he had seen Mr. Su's letter to the bicycling industry and that he was "disappointed to see this claim from THE" and that he had "made it clear to our customers in the USA that they need to continue to buy from a licensed manufacturer." A copy of that e-mail is attached as Exhibit "K" and incorporated herein by reference.

15. On July 3, 2007, Mr. Thorne sent an e-mail to Mr. VanEnkevort stating that Cane Creek expected full payment for all products sold from the date of termination through the present. Mr. Thorne noted that by accepting payment, Cane Creek did not authorize any future sales of the formerly licensed products. A copy of that e-mail is attached as Exhibit "L" and incorporated herein by reference.

16. By e-mail dated August 3, 2007, Mr. Su stated to Cane Creek that "[w]e respect your Intellectual property and will avoid making infringement affairs." A copy of that e-mail is attached as Exhibit "M" and incorporated herein by reference.

17. By e-mail dated August 8, 2007, Mr. VanEnkevort claimed that Tien Hsin and FSA had, in fact, accounted for all royalties due. He also advised that FSA intended to continue selling headsets on their website despite Cane Creek's patent rights. A copy of that e-mail is attached as Exhibit "N" and incorporated herein by reference. This e-mail was Cane Creek's first notice that FSA and Tien Hsin intended to continue selling headsets covered by the Cane Creek patent without a proper license. Cane Creek now believes that Tien Hsin has likely manufactured and sold threadless headsets since the date of termination without disclosing those sales to Cane Creek or paying any royalties.

18. On August 15, 2007, Tien Hsin and FSA filed suit against Cane Creek in the United States District Court for the Western District of Washington, Case No. 007-1272A, seeking a declaratory judgment of patent non-infringement, invalidity and unenforceability. This suit was Cane Creek's first notice that FSA is, in fact, a wholly owned subsidiary of Tien Hsin. During a prior dispute between the parties, counsel for Tien Hsin stated otherwise. See email from Mr. Adolph dated October 26, 2004 attached hereto as Exhibit "O" and incorporated herein by reference.

19. On August 23, 2007, Plaintiff filed an Amended Complaint in the

above-entitled action, which amended the breach of contract allegations against Tien Hsin, added FSA as a defendant and added claims for patent infringement against both defendants. The undersigned presented a courtesy copy of the Amended Complaint to Mr. Adolph who refused to accept service.

20. On August 24, 2007, Plaintiff sent a Request for Waiver of Formal Service of Summons for the Original and Amended Complaint to Defendant Tien Hsin in Taiwan via DHL courier service, along with copies of the original and Amended Complaints.

21. To date, DHL has been unable to deliver the package to Tien Hsin because employees at Tien Hsin's address in Tai-Li City, Taichung County, Taiwan claimed that Douglas Chiang, President of Tien Hsin, "no longer works for the company." As a result, on August 30, 2007, Plaintiff sent another Request for Waiver of Formal Service of Summons for the Original and Amended Complaint to Defendant Tien Hsin via e-mail through its attorney, Mr. Adolph. Mr. Adolph has refused to pass on these documents to this client.

22. Plaintiff is currently attempting to serve Defendant FSA with a copy of the summons and Amended Complaint by private process server through its registered agent in Washington.

23. Cane Creek will shortly attempt to serve Tien Hsin through its wholly owned subsidiary, FSA. See <u>Volkswagenwerk Aktiengesellschaft v. Schlunk</u>, 486 U.S. 694, 708 (1988).

F.N. 1. Mr. Adolph claimed unequivocally that Full Speed Ahead, Inc. was not a wholly owned subsidiary of Tien Hsin. It now appears that less than two months after his e-mail, Defendant Full Speed Ahead, Inc. was incorporated in Washington State on December 30, 2004. The Full Speed Ahead, Inc. referenced in Mr. Adolph's e-mail was apparently a California corporation which was "merged out," according to the California Secretary of State's website - a fact unknown to Cane Creek until recently because of Mr. Adolph's 2004 e-mail.

Docket Entry #6, 1-7.

Corporations are served in accordance with Rule 4(h)(2), which provides that when a corporation is foreign, to wit, that it is "not within any judicial district of the United States," then service of the summons upon a foreign corporation may be

accomplished in "any manner prescribed for individuals by [Rule 4(f)] except personal delivery as provided in [Rule 4(f)(2)(C)(i)]." Fed.R.Civ.P. 4(h)(2). The 120 day time limit for service of a summons upon a individual specifically "does not apply to service in a foreign country pursuant to subdivision (f) . . . ." Fed.R.Civ.P. 4(m). See BDL Int'l v. Sodetal USA, Inc., 377 F.Supp.2d 518, 521 (D.S.C. 2005).

Thus, when plaintiff filed its earlier motion, no set time for service of the summons had expired, which makes the motion for enlargement of time governed by Rule 6(b)(1), which provides in relevant part that

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

Fed.R.Civ.P. 6(a)(1). Plaintiff's motion, the above set forth allegations, as well as the supporting Exhibits A-P, provided this court with ample cause to allow an extension of time under Rule 6(b)(1).

In an abundance of caution, the court will also review plaintiff's request under Rule 4(m), even though that provision is clearly not applicable to service of a foreign corporation. In requesting that this court reverse its decision, defendants have relied on a less than comprehensive reading of Rule 4(m) and upon a decision of the Court of Appeals for the Fourth Circuit that was called into question by a later decision of the Supreme Court. Further, defendants' argument ignores the clear advice provided in the Official Commentary to Rule 4(m) issued by the Advisory Committee. Specifically, defendants argue that "FRCP 4(m) provides that the court shall dismiss

-9-

an action if the complaint is not served on a defendant within 120 days of being filed, or order that it be served within a specified period of time" and that "the court shall provide [extensions] only on a showing of good cause." Defendants' Motion, at 16. What Rule 4(m) actually provides is that

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that <u>if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period</u>. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

Fed.R.Civ.P. 4(m)(emphasis added). Thus, where a plaintiff misses the deadline, the court is <u>required</u> to extend the time if good cause is shown. This is further brought home in the Notes of the Advisory Committee, constituting the official commentary, entered in conjunction with the 1993 amendments to the Federal Rules, which clearly provide as follows:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and <u>authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown</u>. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Advisory Committee Notes to Rule 4(m), 1993 Amendments.

Further, defendants' citation to the court of <u>Mendez v. Elliot</u>, 45 F.3d 75 (4th Cir. 1995), for the proposition that Rule 4(m) requires a showing of good cause before an extension may be granted has been subjected to a close review by this court.

Close review of Mendez reveals that the appellate court therein addressed the version of Rule 4(m) that predated the 1993 amendments, and the decision in Mendez issued a year before the Supreme Court addressed Rule 4(m) in Henderson v. United States, 517 U.S. 654, 662-63 (1996). Thus, Mendez is simply not good law when courts interpret the good cause requirements, or lack thereof, in cases applying Rule 4(m) post amendment. Instructively, the Court in Henderson noted that "courts have been accorded discretion to enlarge the 120-day period even if there is no good cause shown." Henderson, supra, at 663 (citations and corresponding quotation marks omitted). So, even if Rule 4(m) applies as defendants argue, this court could grant an extension of such time with or without good cause.

While the court has received and considered defendants' arguments, the court cannot find good reason to reverse course. The appeal which defendants' argument lacks is that plaintiff did not just file this action and do nothing for four months; instead, plaintiff attempted to engage the then known defendant in settlement discussions in an attempt to avoid expensive litigation. Not only did plaintiff attempt to engage such defendant, it provided such defendant's counsel a copy of the filed action, it exacted agreements and conciliation from defendant, and it appears that plaintiff genuinely believed that litigation would be avoided. This all unraveled at the eleventh hour when plaintiff discovered that defendant was allegedly making unlicensed product under the guise of another corporate entity, and that it was filing a declaratory judgment action against it in the United States Courts for the District of Washington.

While this type of effort on the part of a plaintiff does not fit neatly into traditional notions of a plaintiff knocking on doors and using skip-trace methods to find an elusive defendant, it does strike this court as precisely the type of activity that Congress as well as the courts, both state and federal, have been attempting to encourage through mediation, revisions to the federal and local rules, and legislation such as the Civil Justice Reform Act. Indeed, even Rule 1 anticipates such conduct:

> These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.

Fed.R.Civ.P. 1. As it now stands, the budgets of the federal court are being decimated, courthouses are being closed, and the court's ability to retain qualified personnel is being curtailed. Rather than find plaintiff's attempts to resolve this action insufficient, this court commends them and finds that in these particular circumstances, they constitute *very* good cause for allowing an extension of time to serve the summons. Finally, the court also reaffirms its finding that if excusable neglect was required to be shown, which is apparently not the standard, then plaintiff has also proffered evidence indicating that any neglect in this matter was attributable to lulling efforts attributable to defendants, that defendants were at all times aware of the pendency of this suit, that defendant had on the face of their contracts with plaintiff agreed to litigate their differences in this forum, and that when discussions broke down, out-of-state counsel for defendant refused to accept service, placing an enormous burden on plaintiff to serve a defendant that is domiciled in a country that

is a non-signatory to the Hague Convention. In the end, it cannot be said that the further maintenance of this case comes as any surprise to defendants.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Reconsideration (#16) is **GRANTED**, and having reconsidered both the factual basis for the decision as well as the current case law, the court **REAFFIRMS** its earlier decision granting plaintiff an extension of time.

Signed: October 15, 2007

Dennis L. Howell
United States Magistrate Judge